IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>vs.<br><br>JERMAINE FINLEY, JR.,<br><br>                    Defendant. | 8:15CR183<br><br>**MEMORANDUM AND ORDER** |

This matter is before the court on the parties' objections, Filing Nos. 39 and 41, to the Findings and Recommendation ("F&R") of the United States Magistrate Judge, Filing No. 35, F&R; Filing No. 38, Hearing Transcript ("Hr'g Tr.") at 128-138, on the defendant's motion to suppress, Filing No. 23. The defendant has been charged with being an addict in possession of a firearm, that is, a Bushmaster XM15-E2S rifle, in violation of 18 U.S.C. § 922(g)(3). Filing No. 1, Indictment. The defendant moves to suppress the firearm he is accused of possessing, which was found in a search authorized by a search warrant allegedly based on evidence found in an improper protective sweep.

Pursuant to 28 U.S.C. § 636(b)(1)(A), the court has conducted a de novo determination of those portions of the F&R to which the parties object. *United States v. Lothridge*, 324 F.3d 599, 600-01 (8th Cir. 2003). The court has reviewed the record including the transcript of the hearing, and the exhibits, including a DVD recording[1] of

---

[1] The video portion of the DVD shows only a street view of the area in front of the patrol car from a camera fixed in the vehicle. The officers' mobile microphones, however, were worn by the officers throughout the encounter and recorded the audio of the episode. *See* Filing No. 38, Hr'g Tr. at 13-14; Hr'g Ex. 16, DVD. For ease of reference, and because nothing of substance is recorded on the video portion of the DVD, the court will refer to the DVD as "the audio recording."

the police encounter. Filing No. 38, Hr'g Tr.; Filing No. 33, Exhibit List, Hr'g Ex. 16, DVD.

I. FACTS

The facts are stated in the magistrate judge's F&R and will be repeated only as necessary to the court's opinion. Filing No. 35, F&R (incorporating statements made on the record); Filing No. 38, Hr'g Tr. at 55-62. An evidentiary hearing was held on October 7, 2015. Filing No. 38, Hr'g Tr. Law enforcement officers Aaron Hanson, Mark Matuza, Kenneth Fortune, Troy Liebe, and Brooks Riley testified at the hearing. *Id.* at 4-51, 54-118. The magistrate judge found their testimony credible. *Id.* at 128. The court has reviewed the audio recording and finds it essentially corroborates the officers' testimony. Filing No. 33, Exhibit List, Ex. 16, audio recording.

At the hearing, Sergeant Hanson testified that he and other officers were executing a misdemeanor warrant on the defendant at 3323 North 40th Street in Omaha, Nebraska, on April 23, 2015. *Id.* at 5. The officers had information regarding the defendant's gang affiliation, criminal history, and other events involving the defendant and the residence, including a "shots fired" call, a vehicle pursuit, and the recovery of a ballistic vest. *Id.* at 7-10. The officers also had familiarity with the defendant's reported involvement with firearms and the criminal histories of his associates. *Id.* at 10-12. The officers had received information that the defendant lived at the house on North 40th Street in Omaha, Nebraska. *Id.* The officers saw him through the window as they approached the residence. *Id.* at 5-6, 14-16; *see also* Hr'g Ex. 16, audio recording at 21:26:31.

The officers stepped onto the front porch and knocked but did not receive an immediate response. Hr'g Tr. at 16-17; Ex. 16, audio recording at 21:26:57 to 21:28:00. A female answered the door and at first denied that the defendant was at the residence. Hr'g Tr. at 17-18. Shortly thereafter, the defendant emerged from the house carrying a child. *Id.* at 19. Sergeant Hanson testified that at that point he smelled a strong odor of marijuana in the house. *Id.* The officer can be heard on the audio recording stating that that he smelled marijuana. Ex. 16, audio recording at 21:28:33. Hanson testified that at the time he smelled the marijuana he determined he would seek a search warrant to search for marijuana and drug-related items. *Id.* at 21. He can be heard on the audio recording mentioning securing the premises and getting a warrant and later states "we're going to get a warrant." Ex. 16, audio recording at 21-29:16 to 21:30:29; 21:31:25.

Meanwhile, officers on the side of the house heard sounds emanating from the area of the side door. Filing No. 38, Hr'g Tr. at 96-98, 112-113. The officers believed that someone was barricading the door or preparing to open it and relayed that information via radio to the other officers. *Id.* at 17, 56, 98-99. Officer Riley testified that he also was at a side door and heard rustling against the door, which he believed was someone either going to exit or barricading. *Id.* at 113. However, both Officers Liebe and Riley testified that they observed no one exit the rear of the house. *Id.* at 107, 113.

Lieutenant Mark Matuza testified that he also smelled a "very strong" or "tremendously strong" odor of marijuana from within the residence. *Id.* at 56-57. Officer

Fortune testified that he could smell marijuana from the foot of the stairs leading to the front door.  *Id.* at 77-78.

Officer Hanson testified that he secured the premises and performed a protective sweep for the safety of the officers and to prevent destruction of evidence.  *Id.* at 12, 21-23.  In the course of that sweep, the officers noticed wood shavings and insulation on the floor beneath a trapdoor to the attic.  *Id.* at 114.  Officer Hanson testified that he heard a noise coming from the attic and thought a person could be hiding there.  *Id.* at 36.  Officer Riley also testified he heard a noise from the attic hatch.  *Id.* at 115.  Officer Hanson can be heard on the audio recording stating "how much you want to bet we're going to find a gun up there."  Ex. 16, 21:34:17 to 21:34:22.  The officers later entered and searched the attic and found weapons in the insulation of the attic.  *Id.* at 37; *see* Ex. 9, photograph.

The affidavit in support of the application for a warrant relates the following:  the subscriber of utilities for the residence located at 3323 North 40th Avenue was a convicted felon with a history of forgery, crack cocaine possession and felony shoplifting.  Hr'g Ex. 11, Affidavit and Application for the Issuance of a Search Warrant at 1, 3.  Officer Hanson had received information about the whereabouts of a wanted person from a concerned citizen, who had provided him with accurate information in the past.  *Id.* at 2.  The citizen had observed a vehicle pull up to the residence located at 3323 N. 40th Street and had seen the defendant, Jermaine Finley, Jr., enter the residence.  *Id.*  Finley was known to the North Gang Unit of the Omaha Police Department as a member of the 44th Avenue Crip gang who had an outstanding domestic violence warrant for his arrest.  *Id.*  Finley was a known gang member

4

because he wore gang colors, associated with gang members and was involved in gang-related crimes. *Id.* Officers had prior knowledge that he had a history of firearm possession and marijuana possession. *Id.* at 3. The affidavit further relates that uniform patrol officers approached the residence to execute the warrant and officers Fortune, Kerrie Orozco and Hanson could smell the distinct odor of marijuana emanating from the open front door. *Id.* at 2. Two known 44th Avenue Crip gang members, Greg Bahati and Dionte Dortch, exited the residence. *Id.* Affiant officers had prior knowledge that Bahati and Dortch were convicted felons with a history of assault, firearm possession, controlled substance possession and probation violations. *Id.* at 3. Bahati was then on bond for possession with intent to deliver crack cocaine. *Id.* The affiants reported they believed there was a possibility they would find marijuana in the residence due to the strong odor of marijuana emanating from the residence. *Id.* Their belief that they would locate firearms was based in part on the gang history of the occupants and in part on the firearms that had been found in the attic. *Id.* Both detectives who signed the affidavit had several years of experience with the gang unit and were familiar with the smell of marijuana through training and experience. *Id.*

At the close of the hearing, the magistrate judge found that the circumstances did not justify a protective sweep and recommended that the defendant's motion to suppress be granted with respect to the items identified in the protective sweep that had been set out in the search warrant and affidavit. *See* Filing No. 38, Hr'g Tr. at 132. Because the defendant exited the house and was arrested outside, the magistrate judge found there was no lawful basis for a protective sweep of the inside of the house. *Id.* He found the officers and occupants were in no immediate danger and the officers could

have secured the perimeter, applied for a search warrant, and then entered the premises. *Id.* He stated that "under the circumstances of cases like this, if a protective sweep were allowed and were permissible constitutionally to enter a home, that the protective sweep would trump or literally swallow the requirement that a search warrant be required to enter someone's home." *Id.*

However, he found that, with all of the evidence gained by the protective sweep excised from the warrant application and affidavit, there remained sufficient information to establish probable cause for a search warrant. *Id.* at 133. He also found the officers' decision to seek a search warrant was not based on any illegally obtained evidence. *Id.* Further, the magistrate judge found that even if the affidavit was insufficient, the officers "were acting in good faith in the belief that this search warrant was a valid search warrant" and the evidence was admissible under the good-faith exception outlined in *United States v. Leon*, 468 U.S. 897, 921–22 (1984). *Id.* at 135.

The government objects to the magistrate judge's conclusion that the combination of factors known to and observed by the officers did not amount to an exigency sufficient to justify the protective sweep that preceded the application for the search warrant. The defendant objects to the magistrate judge's finding that the evidence was admissible under the independent source doctrine, notwithstanding the finding that the protective sweep was improper. The defendant also objects to the finding that the officers executed the warrant in good faith and the evidence is admissible under *Leon*.

II. LAW

Warrantless searches and seizures inside a home are presumptively unreasonable. *See Kentucky v. King*, 563 U.S. 452, 460 (2011). The Fourth Amendment "prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." *Payton v. New York*, 445 U.S. 573, 575, 590 (1980). "The Court's reasoning appears to apply regardless of whether the crime charged in the warrant is a misdemeanor or a felony." *Shreve v. Jessamine Cnty. Fiscal Court*, 453 F.3d 681, 683 (6th Cir. 2006); *see also United States v. Clayton*, 210 F.3d 841, 843 (8th Cir. 2000) (holding that a valid misdemeanor arrest warrant "carries with it the authority to enter the residence of the person named in the warrant in order to execute the warrant so long as the police have a reasonable belief that the suspect resides at the place to be entered and that he is currently present in the dwelling"); *United States v. Spencer*, 684 F.2d 220, 222–24 (2d Cir.1982).[2]

The Fourth Amendment permits an officer to conduct a protective sweep of the premises if there are "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on *the arrest scene*." *Maryland v. Buie*, 494 U.S. 325, 334 (1990) (emphasis added). "As an incident to an arrest the officers [can], as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Id.* A broader sweep is

---

[2] The Supreme Court's recent holding that a canine–sniff of the curtilage of a home is a violation of the Fourth Amendment absent either a search or arrest warrant has little application to the circumstances of this case because the officers herein had an arrest warrant. *See Florida v. Jardines,* 133 S. Ct. 1409, 1413-15 (2013).

7

permitted "when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* at 337. In either circumstance, a protective sweep "is not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found" and can last "no longer than is necessary to dispel the reasonable suspicion of danger." *Id.* at 335–36; *see United States v. Waldner*, 425 F.3d 514, 517 (8th Cir. 2005) (stating that "*Buie* does not allow a protective sweep for weapons or contraband. ").

Also, "[t]he risk that evidence will be destroyed during the time required to obtain a search warrant can be an exigent circumstance that justifies a warrantless entry." *United States v. Leveringston*, 397 F.3d 1112, 1116 (8th Cir. 2005). To determine whether exigent circumstances justify an officer's warrantless entry, courts consider "the circumstances that confronted police at the time of the entry." *Id.* In particular, courts "look objectively at whether a reasonable, experienced police officer would believe evidence was in danger of removal or destruction." *United States v. Cisneros–Gutierrez*, 598 F.3d 997, 1004 (8th Cir. 2010). Typically, courts find that risk of destroyed evidence is an exigent circumstance when officers have reason to believe that someone is actively destroying evidence. *See, e.g., id.* (involving sounds of running water and a garbage disposal as grounds for police to reasonably believe there was a fair probability that evidence of drug trafficking would be lost if they did not make immediate entry). However, exigent circumstances cannot exist when the police have probable cause only to believe an infraction has been committed. *State v. Beeken*, 585 N.W.2d 865, 872 (Neb. App. 1998) (stating that a warrantless entry by police to

8

preserve evidence is not justified in the case of a noncriminal, civil forfeiture offense or an infraction punishable by a fine of not more than $100).

A violation of the Fourth Amendment usually triggers exclusion of evidence obtained by way of the violation from a subsequent criminal prosecution. *United States v. Davis*, 760 F.3d 901, 903 (8th Cir. 2014), *cert. denied*, 135 S. Ct. 996 (2015). "[T]he exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality or fruit of the poisonous tree." *United States v. Hastings*, 685 F.3d 724, 728 (8th Cir. 2012) (quoting *United States v. Riesselman*, 646 F.3d 1072, 1078 (8th Cir. 2011)); *see Murray v. United States*, 487 U.S. 533, 536–37 (1988). The evidence should be excluded, however, only if the "illegality is at least a but-for cause of obtaining the evidence." *Hastings*, 685 F.3d at 728.

The defendant bears the burden of establishing a nexus between the alleged constitutional violation and the discovery of the evidence and if the defendant "sufficiently 'comes forward with specific evidence demonstrating taint, the ultimate burden of persuasion to show the evidence is untainted lies with the government.'" *Id.* (quoting *Riesselman*, 646 F.3d at 1079). The Government "must show the evidence obtained after the illegal search was not 'come at by exploitation of that illegality [but] instead by means sufficiently distinguishable to be purged of the primary taint.'" *Id.* (alteration in original) (quoting *Wong Sun v. United States*, 371 U.S. 471, 488 (1963)).

The exclusionary rule has no application where the Government learns of the evidence from an independent source. *Segura v. United States*, 468 U.S. 796, 805 (1984). When "officers, having probable cause, enter premises, and with probable

9

cause, arrest the occupants who have legitimate possessory interests in its contents and take them into custody and, for [a short time], secure the premises from within to preserve the status quo while others, in good faith, are in the process of obtaining a warrant, they do not violate the Fourth Amendment's proscription against unreasonable seizures." *Id.* at 798. When a later-arriving warrant is based on information "wholly unconnected" to the illegal entry, evidence discovered during the search is admissible because its discovery is based on an independent source. *Id.* at 813-14 (noting that "[n]o information obtained during the initial entry or occupation of the apartment was needed or used by the agents to secure the warrant"). Accordingly, officers who enter and seize a home to preserve the status quo while waiting for a search warrant do not commit an independently sanctionable violation of the Fourth Amendment as long as they had probable cause at the moment of entry and the seizure is not unreasonably long. *Id.* at 798, 810.

In applying the exclusionary rule, "[t]he sufficiency of a warrant affidavit which contains information from an unlawful search is evaluated after deleting that information." *Davis*, 760 F.3d at 903. When faced with a warrant containing information obtained pursuant to an illegal search, a reviewing court must excise the offending information and evaluate whether what remains is sufficient to establish probable cause. *United States v. Dessesaure*, 429 F.3d 359, 367 (1st Cir. 2005). If an affidavit in support of a search warrant "sets forth sufficient facts to lead a prudent person to believe that there is a 'fair probability that contraband or evidence of a crime will be found in a particular place,'" probable cause exists and a warrant may issue. *United States v. Warford*, 439 F.3d 836, 841 (8th Cir. 2006) (quoting *Illinois v. Gates*, 462 U.S.

213, 238 (1983)). Under Nebraska law, "the smell of fresh marijuana smoke coming from a residence would justify a search warrant." *Beeken*, 585 N.W.2d at 870; *see, e.g., Johnson v. United States*, 333 U.S. 10, 13 (1948) (recognizing that the odor of a burning controlled substance "might very well be found to be evidence of most persuasive character" in finding probable cause to issue a search warrant); *United States v. Cephas*, 254 F.3d 488, 495 (4th Cir. 2001) (suggesting that the odor of burning marijuana emanating from inside an apartment alone would almost certainly have given an officer probable cause to believe contraband-marijuana-was present in an apartment); *Gompf v. State*, 120 P.3d 980, 986 (Wyo. 2005) (explaining that once officers smelled burned marijuana in the residence, they had probable cause to justify issuance of the search warrant); *State v. Hughes*, 607 N.W.2d 621, 627 (Wis. 2000) ("When the strong smell of marijuana is in the air, there is a 'fair probability' that marijuana is present. This is common sense."); *but see United States v. Morgan*, 160 F. App'x 694, 698 (10th Cir. 2005) (declining to decide whether smell of burned marijuana coming from a residence, standing alone, would establish sufficient probable cause for a search warrant, but stating that the smell together with a defendant's admission provides probable cause for a search warrant). "*Johnson* [*v. United States*, 333 U.S. at 13] clearly stands for the proposition that the smell of a controlled substance does not justify a warrantless search but can be probable cause for a search warrant." *Beeken*, 585 N.W.2d at 873.

Even if an affidavit is insufficient to establish probable cause to issue a search warrant, evidence may still be admitted if the officer executing the search warrant relied in good faith on a judge's determination that there was probable cause to issue the

11

warrant and that reliance was objectively reasonable. *Leon*, 468 U.S. at 922. To assess whether an officer relied in good faith on the validity of a warrant, a court must consider the totality of the circumstances, including any information known to the officer but not included in the affidavit. *United States v. Jackson*, 784 F.3d 1227, 1231 (8th Cir. 2015). A finding of good faith may be precluded when the judge issuing the search warrant "wholly abandon[s] his judicial role" or when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (citations omitted); *see United States v. Trejo*, No. 15-1609, 2015 WL 8289980, *2 (8th Cir. Dec. 9, 2015) (per curiam).

   III.   DISCUSSION

The court first agrees with the magistrate judge's conclusion that there was no showing of a need for a protective sweep. The court's review of the audio recording of the encounter shows that the people remaining in the house were women and children. The audio recording demonstrates that the officers were not in immediate danger and could have secured the premises from the outside while waiting for a warrant. The court's review of the audio recording also shows the officers more likely engaged in a search for evidence in the attic, not a person.

Further, the government presented no evidence that the defendant or anyone else attempted to destroy the marijuana, or that officers had an objective basis for any belief that evidence would be destroyed. The record shows that several people had already left the premises and those who remained were being watched by the officers. If the presence of family members or friends at the scene of an arrest, without more, were enough to justify a reasonable officer in believing that destruction of evidence was

12

imminent, then warrants would be unnecessary whenever a suspect's family or friend happened to be in the same house where evidence of a serious offense might be located.

The court next agrees with the magistrate judge's finding that the search warrant, excised of the information about finding the weapons in the attic, provides probable cause for the issuance of a search warrant. The government has shown that the seized evidence is admissible under the independent source doctrine. The court finds the affidavit in support of the search warrant contains sufficient facts to lead a prudent person to believe that there was a fair probability that contraband or evidence of a crime would be found in the house. Those facts include the smell of marijuana, coupled with the defendant's criminal history and reputed gang affiliation, as well as the criminal histories and known affiliations of the other occupants present at the house.

Significantly, the officers were on the front porch and in a position to detect the odor of marijuana for a legitimate purpose—to execute a search warrant. The officers were assigned to the Fugitive Task Force and charged with serving arrest warrants, and the police had probable cause to believe that Finley was in the home because they had been informed he lived there and saw him through the window. The record shows that the agents' decision to seek the warrant was not prompted by what they had seen during their initial entry, but based on the overwhelming odor of marijuana together with facts they knew about the other occupants of the house. The court finds that the officers would have sought the warrant even if they had not known of the guns secreted in the attic. In light of this finding, the court need not address the *Leon* good-faith issue. Accordingly,

13

IT IS ORDERED:

1. The government's objection (Filing No. 41) to the F&R (Filing No. 35) is overruled.

2. The defendant's objection (Filing No. 39) to the F&R (Filing No. 35) is overruled.

3. The Findings and Recommendation of the United States Magistrate Judge (Filing No. 35) are adopted.

4. The defendant's motion to suppress (Filing No. 23) is denied.

Dated this 22nd day of December, 2015

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge